(65 App. Div. 338.)

WASHINGTON v. BANK FOR SAVINGS IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 15, 1901.)

1  BANK DEPOSITS—TRUSTS FOR CHILDREN—LACK OF ISSUE—FAILURE OF TRUST
   —RECOVERY BY ADMINISTRATOR—SUFFICIENCY OF EVIDENCE.
      In a suit by an administrator to recover certain deposits made with a
   bank in his intestate's name "in trust for son T.," and "in trust for son
   J.," the evidence tended to show that plaintiff's intestate had lived in
   the same house for 28 years, and that at time of her death she was 75
   or 80 years old. The two bank books introduced by the plaintiff con-
   tained statements, purporting to have been made by the intestate, that
   in January, 1882, T. was 9 years old, and in August, 1883, J. was 11.
   The intestate died in 1893. No witnesses were produced who had ever
   seen these or any children of the intestate, and her friends and neighbors
   testified that she had frequently declared to them that she never had any
   children. *Held*, that the evidence was sufficient to justify the jury in
   finding that plaintiff's intestate never had any children named T. and J.,
   thus entitling the administrator to recover the deposits as having been
   made for his intestate's own benefit.

2. PEDIGREE—LACK OF ISSUE—HEARSAY—ADMISSIBILITY.
      The intestate's declarations that she had never had any children were
   admissible; hearsay evidence being equally admissible to establish lack
   of issue as to establish the fact of issue, or any other question of
   pedigree.

Appeal from trial term.

Action by Walter S. Washington, as ancillary administrator, etc., of Margaret Hunter, deceased, against the Bank for Savings in the City of New York. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

W. W. Thompson, for appellant.

Louis Marshall, for respondent.

McLAUGHLIN, J. . In February, 1895, Margaret Hunter, whose maiden name was Margaret Brown, died intestate. For many years prior to and at the time of her death she resided in the same house in Newark, in the state of New Jersey. After her death there were found among her papers several bank books, representing deposits in various savings banks, most of them in the city of New York. These books represented accounts kept in the names of various persons:

"Margaret Brown; Margaret Hunter; Margaret Hunter in trust for son Thomas; Margaret Hunter in trust for son John; Margaret Hunter in trust for Thomas Hunter; Margaret Brown for niece Margaret Hunter; Margaret Brown for Margaret Hunter; Margaret Hunter in trust for John Smith; Margaret Hunter in trust for Margaret Smith."

There were three books representing accounts in the defendant bank, one in the name of Margaret Brown, one in the name of Margaret Hunter in trust for son Thomas, and a third in the name of Margaret Hunter in trust for son John. After her death the plaintiff was appointed ancillary administrator, and as such he demanded from the defendant the moneys represented by the three books issued by it. The defendant denied his right to the moneys represented by such books, and thereupon this action was brought to recover the same. Subsequent to the commencement of the action the defendant paid to the plaintiff the amount called for by the book issued in the name of Margaret Brown, but refused to pay the amounts called for by the other two books, and the subject-matter of this controversy relates to the plaintiff's right to recover such sums. The accounts represented by these two books were opened by Margaret Hunter personally. She deposited with the defendant all of the moneys represented or called for by them. The first account, "Margaret Hunter in trust for son Thomas," was opened and the book issued on the 3d of January, 1882. According to a statement contained in the book, she then declared that the son Thomas was 9 years of age. The other one—"Margaret Hunter in trust for son John"—was opened and the book issued to her on the 22d of August, 1883; and she then declared, according to a statement contained in the book, that John was 11 years of age. If at the time Margaret Hunter deposited with the defendant the moneys represented by the two books in question she had no son John or Thomas, then there can be no doubt but that the plaintiff is entitled, as her representative, to recover from the defendant the amounts called for by them, inasmuch as in that event the trusts attempted to be erected were exclusively for her own benefit. Cunningham v. Davenport, 147 N. Y. 43, 41 N. E. 412, 32 L. R. A. 373, 49 Am. St. Rep. 641; Haux v. Savings Inst., 2 App. Div. 165, 37 N. Y. Supp. 917; Id., 154 N. Y. 736, 49 N. E. 1097; In re Mueller, 15 App. Div. 67, 44 N. Y. Supp. 280. If, however, she did not have sons at that

72 N.Y.S.—48

time, but subsequently had sons by those names, and such sons were living at the time of her death, a valid trust was created for the benefit of each, and the plaintiff is not entitled to recover. The question really presented, therefore, was whether she did, at the time the deposits were made and at the time of her death, have a son Thomas and a son John; and this was the theory upon which the action was tried and submitted to the jury. The evidence adduced upon the trial tended to establish that she had lived in the same house in Newark for nearly or quite 28 years, and that at the time of her death she was between 75 and 80 years old. Therefore, if she had sons Thomas and John, and their ages were correctly stated in the books issued by the defendant,—and this was the only evidence on that subject,—they must have been born within five or six months of each other, about 1872 or 1873, and at a time when she lived in the house where she died. No witnesses were produced who had ever seen those children, or either of them, or in fact any children belonging to her, and no evidence whatever was offered to the effect that she had ever had children. The fact that none of the deceased's friends or neighbors were produced who had any knowledge that she had children, and that she must have been upward of 50 years of age when they were born, raises a strong presumption that she never had children, and that these names were used by her for a purpose known only to herself. It is true, there is no conclusive presumption of law that a woman upward of 50 years of age may not have children; but nevertheless there is a strong probability, which almost ripens into a legal conclusion, that she will not, and which has many times been acted upon by the courts. Thus, the English courts have frequently acted upon that probability, and made distributions of money. Lyddon v. Ellison, 19 Beav. 565; Fraser v. Fraser, Jac. 586; In re Widdow's Trusts, L. R. 11 Eq. 408; In re Millner's Estate, L. R. 14 Eq. 245. And in Edwards v. Tuck, 23 Beav. 271, distribution of an estate was made upon the presumption that a woman of 58 would not have children, and the right to distribute depended upon the fact that she would not.

But, in addition to the probability that a woman of the age of Margaret Hunter at the time the sons Thomas and John are alleged to have been born would not have children, we have not only the evidence of her friends and neighbors that they had never seen any children of hers, and had no knowledge that she had ever had any, but also the further fact that she had frequently declared to such friends and neighbors that she had never had any children. It is said that her declarations thus made are inadmissible; that this raises the principal question upon which it is urged the judgment should be reversed. These declarations, it is said, were hearsay evidence. But hearsay evidence is admissible for the purpose of establishing pedigree. 1 Greenl. Ev. §§ 103, 104; Chase, Steph. Ev. art. 31, p. 103; People v. Fulton Fire Ins. Co., 25 Wend. 209; Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836. It has never been questioned in this state, so far as we are aware, since the decision of Ross v. Cooley, 8 Johns. 128, but that, in case of pedigree, hearsay evidence, declarations of persons who from their situation

were likely to know, is admissible, when the person making the declaration is dead. Eisenlord v. Clum, supra. And we do not understand that this rule is seriously questioned by the appellant. It insists, however, that, while hearsay evidence is admissible for the purpose of establishing birth of issue, a different rule should apply in establishing that a person died without issue. We think the rule is the same. Suppose that the contest here were between nieces or nephews; would not the declarations of the deceased be admissible? Manifestly so. No good reason can be suggested why they should not be. If such evidence is admissible to establish issue, then the converse of the proposition must be true. There is no difference between the two. The rule is just as applicable to the one case as to the other. If we are correct in this conclusion, then it follows that the judgment appealed from must be affirmed, because there was sufficient evidence to justify the jury in finding that Margaret Hunter never had sons by the names of Thomas or John, and that when she opened the accounts in question with the defendant bank such accounts were opened for her own benefit, and therefore, she having died intestate, the same belong to the plaintiff, as her representative.

The judgment and order appealed from should be affirmed, with costs. All concur.